**GUERINGER v. ST. LOUIS, B. & M. RY. CO.**
(No. 9200.)

Court of Civil Appeals of Texas. Galveston.
Nov. 22, 1928.

Rehearing Denied Dec. 13, 1928.

R. H. Ward, of Houston, for appellant.

Andrews, Streetman, Logue & Mobley, and W. L. Cook, all of Houston, for appellee.

LANE, J. This suit was instituted by L. A. Gueringer in the district court of Harris county, Tex., against the St. Louis, Brownsville & Mexico Railway Company, on the 2d day of September, 1926. The plaintiff sought a recovery of the sum of $7,573.70, the same being the amount of a certain judgment recovered by plaintiff against the Port O'Connor, Rio Grande & Northern Railway Company, in a suit by him against said company on the 3d day of May, 1909, together with interest thereon at the rate of 6 per cent. per annum from date of said judgment.

For cause of action, the plaintiff, in paragraphs 2, 3, 4, 5, 6, and 7, alleged respectively substantially as follows:

Paragraph 2. That on or about the 22d day of December, 1897, a charter was granted by the state of Texas to the Guadalupe Valley Railway Company, authorizing the construction of lines of railroads over the following routes: "From the west corner of the original four leagues grant, situated in Victoria County, and made to the corporation of the town of Victoria, thence through the City of Victoria and the County of Victoria, and Calhoun County, to the lighthouse on the East end of Matagorda Island in said Calhoun County; and also from said City of Victoria in said Victoria County, and in and through a portion of said last named county and intermediate counties of Jackson, Matagorda, Brazoria and Galveston, to North Galveston in said Galveston County, and also from a place in said Victoria County distant thirteen miles from the said City of Victoria and on the route above mentioned thence through a portion of said Victoria County and the intermediate counties of Refugio, San Patricio and Nueces, to a place in Cameron County, at the common corner of the counties of Cameron and Hidalgo, in the south line of said Nueces County, a total distance of about three hundred miles." That soon after the incorporation of the abovementioned company a survey was made (by whom is not stated) for the location of a line of railway to be built from the city of San Antonio to Port O'Connor, by way of Seguin, Gonzales, Yoakum, and Victoria; that the right of way for the last-mentioned railway was secured and grade constructed on a part thereof in 1898 from Yoakum to Port O'Connor, via Victoria, a distance of 100 miles; that such right of way was secured from the owners of the respective parts thereof by deeds conveying fee simple titles thereto, without reservations of any kind; that no part of said railway was constructed, other than the grade mentioned, and therefore the charter of said company automatically became forfeited by law, but the title to the right of way and grade thereon remained in the railway company as a trust fund or asset to secure the indebtedness due by it for debts incurred by it in constructing said grade, and for the benefit of all other of its creditors.

Paragraph 3. That in March, 1906 (eight years after the incorporation of the railway above mentioned), a charter was granted by the state of Texas to certain persons, some of whom were formerly officers and directors of the Guadalupe Valley Railway Company, to construct lines of railways from a convenient point in Port O'Connor through the towns and cities of Seadrift, Victoria, Yoakum, Gonzales, Seguin, and New Braunfels, and to also construct branch lines from some point at or near the city of Yoakum through the counties of Lavaca, Fayette, and through the counties of Guadalupe and Bexar, to the city of San Antonio, such railway company to be known as the 'Texas Railway Company; "that the purpose of obtaining the last mentioned charter was to merge the same with the corporation known as the Guadalupe Valley Railway Company, and that the Texas Railway Company should acquire and succeed to all the rights and assets, properties and franchises of the Guadalupe Valley Railway Company; and that said Texas Railway Company should stand charged with all the debts, liabilities and obligations of the Guadalupe Valley Company and especially such debts as might have been incurred by said Guadalupe Valley Company in construction of a grade"; that in 1906 a number of San Antonio and Victoria citizens, who were promoters and signers of the charter of the Texas Railway Company, some of whom were also formerly directors and officers of the Guadalupe Valley Company, entered into a conditional written contract with the Texas Railway Company, by the terms of which it was agreed that the citizens of Victoria county would deliver to the Texas Railway Company the deeds to the abovementioned grade, together with the right of way; that said contract to deliver said right of way and grade was conditioned that the Texas Railway Company would complete the construction of a standard gauge line of railway from Victoria to the railway of the St. Louis, Brownsville & Mexico Railway Company by the 1st day of April, 1907, and from there to the town of Port O'Connor by the 1st day of July, 1907; that two copies of such contract were placed in the hands of one V. B. Proctor of Victoria, one of which was to be delivered to the respective parties when the conditions thereof should be complied with.

They further alleged in paragraph 3: That at the time the charter of the Texas Railway Company was obtained, and at the time of the execution of the aforesaid contract, it was contemplated that the Texas Railway Company should file an amendment to its charter, changing its name from the Texas

Railway Company to the Port O'Connor, Rio Grande & Northern Railway Company, and to make some changes as to the line of the railway that was to be constructed under the new name of Port O'Connor, Rio Grande & Northern Railway Company, but this last-named company was to take over, use, and occupy, and build its line of railway over the old grade of the Guadalupe Valley Railway Company, hereinbefore in the petition set forth and described. That in accordance with said intention and understanding, on the 15th day of December, 1906, the Texas Railway Company duly filed in the office of the secretary of state of Texas an amendment to its charter, in all respects in compliance with the law applicable to railway charters; that by said amended charter it was provided: "The name of said corporation shall be the Port O'Connor, Rio Grande & Northern Railway Company." That the Port O'Connor, Rio Grande & Northern Railway constituted a merger with it of the former corporations known as the Guadalupe Valley Railway Company and the Texas Railway Company, and that the said Port O'Connor, Rio Grande & Northern Railway Company succeeded to and took over all of the franchises, rights, property, and assets of the two previous corporations, and particularly the right of way and the grade hereinabove described and set forth, but that the same was so taken over by the said Port O'Connor, Rio Grande & Northern Railway Company, subject to all of the debts and liabilities of said two previous named corporations, and especially the debts and liabilities of said companies incurred in the construction of said grade aforesaid.

Paragraph 4. That shortly after the above charter was obtained, changing the name of the Texas Railway Company to the name of the Port O'Connor, Rio Grande & Northern Railway Company, a resurvey was made of the line located by the Guadalupe Valley Railway Company between Yoakum and Gonzales, and between Gonzales and Smithville, and also a resurvey made of the grade constructed by the Guadalupe Valley Railway Company between Yoakum and Port O'Connor, via Victoria; that the old grade, as constructed by the Guadalupe Valley Railway Company was a 1 per cent. grade, and the Texas Railway Company concluded that said old grade should be reduced to an .075 per cent. grade, and for that purpose the Texas Railway Company made a contract with one W. S. Hipps, of the city of Houston, Tex., to rehabilitate said grade and to reduce it to a .075 per cent. grade, and he spent about $125,000 towards the accomplishment of said work; that plaintiff was employed as chief engineer and superintendent of construction by the Texas Railway Company in said work, at a salary of $300 per month and all expenses, to supervise the rehabilitation work on said grade; that plaintiff worked in said capacity for about two years, and spent his own money for expenses, but that he was never paid his salary or reimbursed for his expenses; that his employment commenced about June, 1906, and lasted until about 1908, when there was owing to him by said company and its successors, the Port O'Connor, Rio Grande & Northern Railway Company, the sum of $8,000; that it was during this work of rehabilitation that the Texas Railway Company amended its charter, changing its name to the Port O'Connor, Rio Grande & Northern Railway Company, as hereinbefore stated, and that most of the grade work was done by the company under its new name; that the said Port O'Connor, Rio Grande & Northern Railway Company, having encountered financial difficulties, suspended work in the construction of the railway, and both it and its predecessor, the Texas Railway Company, wholly failed to pay plaintiff his salary and expenses, and thereupon plaintiff instituted a suit against the said Port O'Connor, Rio Grande & Northern Railway Company, in the district court of Victoria county, state of Texas; that in said cause, on May 3, 1909, plaintiff recovered from said defendant, Port O'Connor, Rio Grande & Northern Railway Company, a judgment for the sum of $7,573.70 with interest thereon at the rate of 6 per cent. from its date; that there is now due, principal and interest, on said judgment the sum of $15,450.31; that said judgment is in full force and effect, and that he procured an abstract of said judgment in the year 1925, and had the same duly recorded.

Paragraph 5. That the Guadalupe Valley Railway Company has never been dissolved; that the directors thereof have held no meetings for several years, and neither they nor the other officers of the company have performed any corporate functions, but they have never resigned; that all of them are dead, except W. P. Stafford, J. K. Hexter, and James F. Welder, who are now the surviving directors of the company, authorized to so act by law and to wind up the affairs of the company and dispose of its assets; that on the 19th day of February, 1926, W. P. Stafford and J. K. Hexter, for a' valuable consideration, executed and delivered to plaintiff their deed to the right of way involved in this suit, and thereby vested in plaintiff the legal title to said right of way.

Paragraph 6. That the defendant, St. Louis, Brownsville & Mexico Railway Company, had no authority to construct its railway over and upon the right of way involved in this suit until it amended its charter on the 26th day of January, 1912.

Paragraph 7. That the Calhoun Cattle Company, which owned about 70,000 acres of land near Port O'Connor, being desirous of having a railroad constructed over the right of way involved, some time in the year 1909 entered into a contract with A. T. Per-

kins, one of the directors of the St. Louis, Brownsville & Mexico Railway Company, acting for said company, whereby it was agreed that the railway company should complete a railway over the right of way involved, and that it would amend its charter so as to authorize it to do so; that by said contract the cattle company agreed to furnish the right of way and grade of the Guadalupe Valley Railway Company to defendant, together with a bonus of $7,500 per year for a term of 10 years, or as much thereof as might be necessary to take care of any loss in the operating expenses of the line of railway over said grade; that said bonus has been fully paid for the full 10 years; that deeds to the right of way and grade were made out to A. T. Perkins, as trustee, for defendant, and that he subsequently conveyed the same to defendant; that the defendant took possession of said right of way under said deed in 1909 or 1910, and in said years built its railway track upon the same, and has at all times since operated its trains thereon; that at the time the aforesaid contract between the cattle company and Perkins was entered into, and at the time defendant took possession of said right of way and grade and built its railway thereon, both Perkins and defendant had actual knowledge and notice of the existence of the unsatisfied judgment of plaintiff, and that said grade was "liable to plaintiff and was charged with his claim as a lien thereon"; that by reason of the facts stated plaintiff has a lien upon 47 miles of said grade for the payment of his said judgment against the Port O'Connor, Rio Grande & Northern Railway Company; that in taking over said grade defendant merged the Guadalupe Valley Railway Company, the Texas Railway Company, and Port O'Connor, Rio Grande & Northern Railway Company into it, and the three former corporations became merged in defendant corporation, and defendant expressly assumed the payment of the debts and liabilities of said former corporations, and especially the debts of plaintiff, or in any event it became liable in equity and law for its payment by reason of said merger; that plaintiff, by the proper recording of an abstract of his judgment against the Port O'Connor, Rio Grande Railway Company, acquired a statutory lien upon said 47 miles of the grade involved in this suit.

Plaintiff's prayer was for a personal judgment against St. Louis, Brownsville & Mexico Railway Company for the amount due on his judgment against the Port O'Connor, Rio Grande & Northern Railway Company, and for the establishment of a lien upon the entire old grade described in his petition, and that the same be foreclosed.

The defendant answered by general demurrer and by several special exceptions. The special exceptions were:

First. To so much of the petition as sought to set up a basis for a personal judgment against defendant and his prayer for such judgment, because there is no basis in any part of the petition upon which the judgment prayed for could be legally rendered.

Second. To all allegations designed to claim and enforce a lien upon real property now in possession of defendant, because there is no basis in any allegation whereby the court might find that plaintiff had a lien that could be legally enforced against any real property in possession of defendant.

Third. To the allegations in paragraph 7 of the petition, claiming an express assumption of plaintiff's debt by defendant, because such allegations are too general and insufficient to advise defendant how plaintiff claims defendant assumed payment of such debt.

Fourth. To the allegations in the petition relative to the granting of the charter to Guadalupe Valley Railway Company and the subsequent history of that corporation, because such allegations are immaterial to any issue in the suit and without value to support any claimed right of recovery in plaintiff, there being no allegation that plaintiff ever had any dealings with said corporation, or that he ever claimed any indebtedness against the same; the allegations of merger of said corporation into a subsequently organized corporation being insufficient to afford such connection as would render any of said allegations concerning Guadalupe Valley Railway Company material in determining any matter in issue in the suit.

Fifth. To the allegations concerning the organization of Texas Railway Company and the subsequent change of name and route by charter amendment, it being alleged that the name was changed to Port O'Connor, Rio Grande & Northern Railway Company, because such allegations are entirely immaterial and irrelevant to any controversy in this cause, there being no allegations in the petition that said Port O'Connor, Rio Grande & Northern Railway Company now owns the legal title to any of the property upon which plaintiff claims a lien, and no allegations of any facts from which it could be inferred that such company does own such legal title, and, in the absence of allegations of this character, any judgment procured by plaintiff against said company, or any claim of lien against its property, would be futile and immaterial in an effort to hold this defendant liable as under a personal judgment, or to hold property in its possession as under a lien.

Sixth. To the allegations contained in paragraph 5 of plaintiff's petition, setting forth the conveyance to plaintiff by purported directors of Guadalupe Valley Railway Company, such allegations being immaterial and entirely insufficient to affect any issue in this cause; the action of two directors, under the circumstances indicated, being of

no binding force and effect, and it appearing upon the face of the allegations as made that plaintiff never was a creditor of said Guadalupe Valley Railway company and was not entitled to have any of its property held for his benefit, in trust or otherwise, and, further, that the conveyance to him was without consideration.

Defendant, answering to the merits, denied generally, and specially pleaded the 10 years' statute of limitation, and matters of estoppel.

The court sustained the exceptions above mentioned and also the general demurrer of defendant, and, upon the refusal of plaintiff to amend, dismissed the suit.

The plaintiff has appealed.

Appellant insists that the trial court erred in sustaining the several special exceptions of the defendant, and, after having done so, in sustaining the general demurrer to his petition, and thereafter, upon the plaintiff's declining to amend his petition, dismissing the suit.

Appellant concedes, and we think correctly so, that all the so-called special exceptions, except special exception No. 3, are in effect general demurrers. We shall therefore so treat them, and first proceed to dispose of the complaint of the action of the court in sustaining said special exception No. 3.

■ Special exception No. 3, as already shown, is addressed to so much of the plaintiff's petition as sought a money judgment against the defendant upon the allegation that the defendant either expressly assumed the payment of the debts and liabilities of the Guadalupe Valley Railway Company, the Texas Railway Company, and the Port O'Connor, Rio Grande & Northern Railway Company, and especially the debt of the plaintiff, evidenced by his judgment against the last-named company, or that it became liable to him for the payment of his said debt, in that it merged said three corporations into its corporation and took the assets and property of said corporations, including the old grade involved in this suit, without paying anything therefor.

The exception to such allegations is that the same is too general and not sufficiently definite to advise defendant how it is claimed that defendant expressly or otherwise assumed payment of plaintiff's debt, or when or how such assumption was consummated, whether by written instrument or by parol negotiations, so as to enable defendant to make answer thereto.

There is no positive affirmative charge that defendant did in fact assume said debt, either orally or in writing. We think the exception was properly sustained. The alleged assumption of his debt by defendant is not supported by any alleged facts. It is manifest, we think, that the defendant was entitled to be more specifically advised as to the nature of such alleged assumption. Such allegations being stricken from the petition left the same without any allegation of an express assumption of the debt of plaintiff by defendant.

■ The alternative allegation, that, if defendant did not expressly assume plaintiff's debt, it did become liable to him therefor by reason of its having merged the three previous corporations into its corporation and had taken their properties without paying any consideration therefor, if true, would not constitute an express assumption of said debt. Accepting the allegations of the plaintiff's petition as true, it is shown that the plaintiff's debt arose on account of work performed by him for the Texas Railway Company, which was chartered on March 21, 1906, and not for the Guadalupe Valley Railway Company, which was chartered about 8 years theretofore, the charter of which became forfeited by law in 1899; that said Texas Railway Company procured an amendment of its charter in December, 1906, so as to change its name to Port O'Connor, Rio Grande & Northern Railway Company, and that the judgment pleaded by the plaintiff was against the last-named corporation; that the basis for such judgment was for work done for the last-named company upon the old grade constructed and owned by the Guadalupe Valley Railway Company, or its stockholders. It is also shown, we think, by appellant's allegations, that at the time the plaintiff performed his work for the Port O'Connor, Rio Grande & Northern Railway Company, and at all times since, said company owned no interest in said grade or the right of way upon which it was constructed; in any event the allegations so made do not show any such interest.

The only attempt to show by the allegations of the petition that there was any merger of the Guadalupe Valley Railway Company with the Texas Railway Company, or the Port O'Connor, Rio Grande & Northern Railway Company, was the allegation that some of the persons who were officers and directors of the Guadalupe Valley Company were among those who organized and procured the incorporation of the Texas Railway Company, some eight years after the forfeiture of the charter of the Guadalupe Valley Railway Company.

It will hardly be contended that the fact that some of the officers and directors of the old Guadalupe Valley Company joined other persons in the organization and incorporation of the Texas Railway Company, and later the Port O'Connor Company, resulted in a legal merger of the Guadalupe Valley Company with the two last-named companies; or that such acts of said parties had the effect to transfer the title of the property of the Guadalupe Valley Company to said companies.

Nor can it be reasonably contended that the occupancy of the defendant of the right

of way and grade owned by the Guadalupe Valley Company, or its stockholders, without paying any consideration therefor, would create a liability on its part to the plaintiff for work he performed in the construction of a grade upon said right of way as an employee of the Port O'Connor Company, who owned no interest in said property, and which was a mere trespasser thereon.

We have carefully considered the plaintiff's petition and every phase thereof, and have reached the conclusion that the trial court properly sustained the general demurrer thereto.

Having reached the conclusions above expressed, it becomes our duty to affirm the judgment; and it is accordingly so ordered.

Affirmed.